UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON MICHAEL SALINAS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>JEFFREY WANG, P. JOHNSON,[1]<br><br>　　　　　Defendants. | Case No. 1:19-00157-HBK<br><br>ORDER GRANTING DEFENDANTS'<br>MOTION FOR SUMMARY JUDGMENT[2]<br><br>(Doc. No. 32)<br><br>ORDER DIRECTING CLERK TO CORRECT<br>MISSPELLING ON DOCKET |

　　　　Pending before the Court is Defendants Wang, M.D. and P. Johnson, N.P.'s Motion for Summary Judgment filed January 26, 2021. (Doc. No. 32, "MSJ"). The MSJ contained a *Rand*[3] warning and notice under Local Rule 260(a). (Doc. No. 32-1). Plaintiff did not file a timely response to the MSJ. (*See* docket). Considering Plaintiff's *pro se* status, on March 18, 2021, the Court *sua sponte* again warned Plaintiff of the pending MSJ and afforded him thirty days to respond. (Doc. No. 33 at 5). On April 28, 2021, Defendants submitted a reply, urging the Court to consider the merits of the MSJ, despite Plaintiff's repeated failure to respond. (Doc. No. 34).

---

[1] Plaintiff identified nurse practioner "P. Jhonson" as a Defendant. (Doc. No. 1 at). In their Answer, Defendants advise that "Jhonson" was a typographical error and admitted that the nurse practioner P. Johnson was the correct named Defendant. (Doc. No. 13 at 1, fn. 1). The Clerk of Court is directed to correct the spelling of Defendant Johnson's name on the docket.

[2] Both parties have consented to the jurisdiction of a magistrate judge in accordance with Local Rule 301. (Doc. No. 30).

[3] *Rand v. Rowland*, 154 F. 3d 952, 962-63 (9th Cir. 1988) (en banc).

The Court finds no genuine dispute as to any material facts as to whether Defendants acted, or failed to act, out of deliberate indifference to Plaintiff's shoulder injury and grants Defendants' MSJ.

**I. BACKGROUND**

Plaintiff Jason Michael Salinas ("Plaintiff" or "Salinas"), a state prisoner initiated this action by filing a *pro se* civil rights complaint under 42 U.S.C. § 1983 on January 21, 2019. (Doc. No. 1). On September 25, 2019, the then-assigned magistrate judge screened the complaint, finding that Salinas had stated cognizable claims of medical deliberate indifference against Defendants Wang and Johnson and directed service of the complaint on Defendants. (Doc. Nos. 10, 12). On December 12, 2019, Defendants filed an answer to the complaint and discovery commenced. (Doc. Nos. 13, 15). On February 3, 2020, Salinas filed an improper reply to Defendants' answer. (Doc. No. 19). After discovery and in compliance with the modified scheduling order (Doc. No. 24), Defendants timely filed the MSJ *sub judice*. (Doc. No. 32). In support, Defendants submitted declarations from defense counsel (Doc. No. 32-2), Defendant Wang (Doc. No. 32-3), and Defendant Johnson (Doc. No. 32-5); Salinas' medical records (Doc. No. 32-3 at 5-74); and letters related to Salinas' medical board complaint against Wang. (Doc. No. 32-3 at 75-81). Because Salinas elected not to respond to the MSJ, the Court nonetheless considers the following in ruling on the MSJ: the Complaint (Doc. No. 1); the exhibits attached thereto, including, Salinas' own affidavit (Doc. No. 1 at 7-9); Salinas' medical records, requests for medical services forms, and health care appeals (*Id.* at 13-32).

**II. APPLICABLE LAW**

**A. Summary Judgment Standard**

The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment should be entered "after adequate time for discovery and upon motion, against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the "initial responsibility" of demonstrating the absence of a genuine issue of material fact. *Id.* at 323. An issue of material fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If the moving party meets its initial burden, the burden then shifts to the opposing party to present specific facts that show there to be a genuine issue of a material fact. *See* Fed R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586. An opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 587. The party is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that a factual dispute exists. Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11. The opposing party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Electrical Serv., Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987). However, "failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

The court must apply standards consistent with Rule 56 to determine whether the moving party demonstrated there is no genuine issue of material fact and showed judgment to be appropriate as a matter of law. *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). "[A] court ruling on a motion for summary judgment may not engage in credibility determinations or the weighing of evidence." *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017) (citation omitted). The evidence must be viewed "in the light most favorable to the nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party. *Orr v. Bank of America*, NT & SA, 285 F.3d 764, 772 (9th Cir. 2002). The mere scintilla of evidence is not sufficient to establish a genuine dispute to defeat an otherwise properly

3

supported summary judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252.

### B. Eighth Amendment Medical Deliberate Indifference

The Constitution indisputably requires prison officials to provide inmates with reasonably adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). To hold an official liable for violating this duty under the Eighth Amendment, the inmate must satisfy two prongs, an objective prong and subjective prong. First, the inmate must suffer from a serious medical need (the objective prong); and, second the official must be deliberately indifferent to the inmate's serious medical need (the subjective prong). *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds*, *Peralta v. Dillard*, 744 F.3d 1076, 1082-83 (9th Cir. 2014); *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012). A medical need is "serious" if the failure to treat "could result in further significant injury or the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations omitted). "This second prong—defendant's response to the need was deliberately indifferent—is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Id*. (internal citations omitted). This standard requires that the prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but that person "must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002). This "subjective approach" focuses only "on what a defendant's mental attitude actually was." *Farmer*, 511 U.S. at 839.

Deliberate indifference is a higher standard than medical negligence or malpractice, and a difference of opinion between medical professionals—or between a physician and the prisoner—generally does not amount to deliberate indifference. *See generally Toguchi v. Chung*, 391 F.3d 1051 (9th Cir. 2004); *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (A mere "difference of medical opinion . . . [is] insufficient, as a matter of law, to establish deliberate indifference."). To prevail on a claim involving choices between alternative courses of treatment,

4

a prisoner must show that the chosen course of treatment "was medically unacceptable under the circumstances," and was chosen "in conscious disregard of an excessive risk to [the prisoner's] health." *Jackson*, 90 F.3d at 332.

Neither will an "inadvertent failure to provide medical care" sustain a claim. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). Misdiagnosis alone is not a basis for a claim, *see Wilhelm v. Rotman*, 680 F.3d 1113, 1123 (9th Cir. 2012), and a "mere delay" in treatment, "without more, is insufficient to state a claim of deliberate medical indifference," *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). Instead a prisoner must show that a delay "would cause significant harm and that defendants should have known this to be the case." *Hallett v. Morgan*, 296 F.3d 732, 746 (9th Cir. 2002).

### III. ANALYSIS

**A. The Complaint**

Salinas alleges Defendants were deliberately indifferent to his serious medical need, in violation of his Eighth Amendment rights, when Defendants delayed treating Salinas' left shoulder pain. (Doc. No. 1 at 3). Salinas states he suffered a shoulder injury which caused him pain and prevented him from going about his normal daily functions in February 2015. (*Id*.). Salinas claims he had to wait 10 months for an x-ray, 13 months for physical therapy, 18 months for an MRI, and 2 ½ years for surgery. (*Id*.). Salinas attributes liability to Defendant Wang for failing to submit proper documentation, which caused a delay in his treatment and for Wang lying "when dealing with [Salinas] and [his] medical file." (*Id*.). Salinas attributes liability to Johnson for failing to properly document his care and failing to "follow through" on his physical therapy and MRI. (*Id*.). Salinas complains that the delay in treatment caused him pain and caused "debris" to accumulate in his shoulder, which would not have occurred if he underwent surgery in a timely manner. (*Id*.). Salinas states that post-operation he suffers from paresthesia, slight pain, numbness, stiffness, and impingement syndrome in his rotator cuff. (*Id*.). As relief, Salinas seeks $400,000 in monetary damages. (*Id*. at 4).

Salinas attaches an "affidavit of default" to his Complaint in which he appears to claim that he is entitled to a default judgment against Defendants. (Doc. No. 1 at 12). A motion

5

seeking a default judgment at the initial pleading stage of a complaint is improper. Federal Rule of Civil Procedure 55(b)(2) allows the court to enter judgment against a party following the clerk of court's entry of default under 55(a). Here, no clerk's default was entered. Further, Defendants answered Salinas' complaint in a timely manner and have abided with all discovery and briefing orders. Thus, Salinas is not entitled to a default judgment to the extent he seeks the same in his Complaint.

### B. Undisputed Facts

#### 1. Plaintiff's Failure to Oppose the Motion

At the outset, despite being afforded two opportunities, Salinas elected not to file an opposition to Defendants' MSJ. (*See* docket, Doc. No. 32-1, *Rand* notice; Doc. No. 33). Thus, Salinas did not submit a separate statement of undisputed facts as required by Local Rule 260(a). Where a party fails to oppose a motion for summary judgment, "Rule 56 is clear that although a court *may* deem facts admitted in the exercise of its discretion, it need not do so." *Warkentin v. Federated Life Ins. Co.*, 594 F. App'x 900, 902-903 (2014); *see* Fed. R. Civ. P. 56 Advisory Committee Notes (2010) (noting that "the court may choose not to consider [a] fact as undisputed, particularly if the court knows of record materials that show grounds for genuine dispute"). Nor may the Court automatically grant summary judgment to a defendant solely because a plaintiff fails to oppose the motion. *Cristobal v. Siegel*, 26 F.3d 1488, 1494-95 & n.4 (9th Cir. 1994); *Martinez v. Stanford*, 323 F.3d 1178, 1182 (9th Cir. 2003).

However, summary judgment cannot be avoided by conclusory allegations unsupported by factual data. *Arpin v. Santa Clara Valley Transportation Agency,* 261 F.3d 912, 922 (9th Cir. 2001) *(citing Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir. 1989)). Where, as here, a party fails to properly support an assertion of fact or fails to challenge the facts asserted by the moving party, the non-moving party may be deemed to have admitted the validity of those facts. *See* Fed. R. Civ. P. 56(e)(2). Further, Local Rule 230(l) provides that the "[f]ailure of the responding party to file an opposition or to file a statement of no opposition may be deemed a waiver of any opposition to the granting of the motion and may result in the imposition of sanctions." The

Court will consider the entire record and deem only those facts true which are properly supported by evidence and otherwise deemed unopposed by Salinas.

**2. Defendants' Evidence**

   **a. Salinas Was Examined, Given Steroid Injections and Physical Therapy**

  P. Johnson is a licensed nurse practitioner (NP) at Valley State Prison. (Doc. No. 35-2 at 1). She treated Salinas for less than a year, roughly between August 6, 2015 to July 12, 2016. (Doc. No. 32-5 at 2). At some point in July 2016, Salinas was transferred to Kern Valley State Prison. (Doc. No. 1 at 8). Following his transfer to Kern Valley State Prison, Dr. Wang first treated Salinas on July 28, 2016 and continued to treat him through December 23, 2016. (Doc. No. 32-3 at 2). At all other times, Salinas was treated by other health care providers.

  On February 2 and 6, 2015, Salinas submitted health care services request forms complaining of, *inter alia*, pain in his left shoulder. (Doc. No. 1 at 13-14). On February 10, 2015, Salinas went to medical complaining of pain in his left shoulder that he attributed to an injury he sustained while playing handball in Contra Costa County's custody. (Doc. No. 32-3 at 45-47). Salinas was prescribed 24 tablets of Ibuprofen 200 mg. (*Id*. at 46). Salinas' medical records do not contain any evidence that Salinas made any other complaints about pain in his left shoulder pain between February 11, 2015 and November 15, 2015. (*Id.* at 3).

  On November 16, 2015, Salinas was examined in medical complaining that his left shoulder has "hurt" for one week. (*Id.* at 40). Salina denied any pain during the examination but claimed he experienced pain with "movement." (Id.). Salinas' vitals (blood pressure, pulse, respiration, temperature) were examined. (*Id*). The notes indicate Salinas "refused pain med." (*See handwritten notes in margins, id*. at 40-41). Salinas was referred for "follow-up." (*Id.*). On December 4, 2015, Johnson ordered an x-ray of Salinas' left shoulder, which was completed the same day. (*Id.* at 60, 73). The results of the x-ray were within normal limits, revealed mild to moderate acromioclavicular arthropathy[4] but no bone abnormality. (Doc. No. 1 at 15; Doc. No.

---

[4] Acromioclavicular arthropathy causes pain and arthritis in the shoulder. *See* https://health.ucdavis.edu/orthopaedics/specialties/sports-medicine-info/ac-joint-rehab.html, last accessed June 8, 2021.

7

32-3 at 50, 69, 73). On December 9, 2015, Johnson prescribed Salinas a steroid injection for his left shoulder. (Doc. No. 32-3 at 51, 67). On December 22, 2015, Johnson prescribed Salinas pain medication. (*Id.* at 59). According to the Complaint, Johnson ordered physical therapy for Salinas on December 22, 2015 and January 26, 2016. (Doc. No. 1 at 8;). Defendants submit records which reveal that Johnson ordered physical therapy on January 26, 2016 and February 16, 2016. (Doc. No. 32-3 at 57). The records indicate that although ordered, Salinas did not attend physical therapy until March 22, 2016. (Doc. No. 32-3 at 49, 58). Salinas complained of pain and expressed frustrations with physical therapy because he was shackled and unable to do the physical therapy properly. (*Id.* at 49).

### b. Salinas Underwent an MRI but MRI Results Delayed

Salinas was examined on April 5, 2016 and May 27, 2016 but it was determined that an MRI of Salinas' left shoulder was not clinically indicated. (Doc. No. 32-3 at 66, 32; Doc. No. 32-5 at 2). On June 17, 2016, Salinas submitted a health care services request form complaining of "extreme pain" in his left shoulder when raising his arm, when putting pressure on it, or when laying on it. (Doc. 32-3 at 48).

Defendant Dr. Wang encountered Salinas three separate times. (*Id.* at 77). First, on July 28, 2016, Dr. Wang examined Salinas and suspecting he had a torn rotator cuff submitted a request for an MRI. (*Id.* at 2, 64). On August 30, 2016, Salinas had an MRI performed. (*Id.* at 2, 71, 74). Dr. Wang next encountered Salinas on September 6, 2016 when he examined Salinas' knee. On December 23, 2016, Dr. Wang saw Salinas for a follow-up appointment. (*Id.* at 56, 61-62). During that appointment, Salinas notified Dr. Wang that he had not received the MRI results. (*Id.* at 2-3). This was the first time Dr. Wang learned that the MRI results were delayed. (*Id.* at 76). The general procedure at CDCR is for the radiology department to provide MRI results directly to inmates. (*Id.* at 3). On December 23, 2016, after learning that Salinas had not been given the MRI results, Dr. Wang directed the radiology department to provide Salinas with his MRI results. (*Id.* at 2). On January 30, 2017, Salinas received the MRI results. (*Id.* at 3, 54). It is undisputed that there was a five-month delay between the date of the MRI and the date Salinas received his MRI results. Physician Assistant Relevante noted that although there was a

8

delay in reporting the MRI results to Salinas "because of systemic issues," he opined that "there was no evidence that it caused an adverse outcome of surgery." (Doc. No. 1 at 21). Dr. Wang states that the "arthroscopy. . . would not have been avoided or results improved with any earlier orthopedic intervention." (Doc. No. 32-3 at 76).

### c. Conservative Treatment and Eventual Surgery

On February 3, 2017, after a determination that conservative treatment for Salinas' left shoulder had failed, a request was made for a surgical consultation for Salinas. (Doc. No. 32-3 at 3, 29-30). On April 7, 2017, Salinas has a surgical consultation. (*Id.* at 3). On May 16, 2017, Salinas underwent surgery to repair a torn rotator cuff in his left shoulder. (*Id.* at 22-23). Salinas stated that his shoulder was "feeling great" after the surgery. (*Id.* at 15).

Both Defendants Dr. Wang and N.P. Johnson attest that:

"The medically acceptable practice, as well as the practice that accords with CDCR guidelines, to treat an injury like plaintiff's left shoulder is to assess the injury, proceed through conservative treatment until it is exhausted, and then proceed to surgical assessment and intervention. Medically acceptable conservative treatment for a left shoulder injury includes physical therapy, home exercise, non-opioid pain medication, education, anti-inflammatory medication, and an assessment of the patient's ability to carry out activities of daily living. The above-described conservative treatment was prescribed for inmate Salinas before he could receive an MRI and, ultimately, surgery."

(Doc. No. 32-2 at 3; Doc. No. 32-5 at 2).

Further, Defendants testify that:

"Based on my professional experiences as a licensed physician[nurse practitioner], my familiarity with inmate Salinas' condition, my clinical visits with him, and a review of his medical records, it is my professional medical opinion that inmate Salinas received proper, timely, and medically acceptable treatment for the left shoulder injury that is the subject of his complaint. My review of inmate Salinas' medical records shows that he received accurate diagnoses, that he was promptly provided treatment, clinically indicated testing, and that his pain levels were managed through appropriate medications."

(Doc. No. 32-3 at 2; Doc. No. 32-5 at 2).

### d. Post-Surgery Complaints

On June 4, 2017, Salinas submitted a patient-inmate health care appeal no. 17038506 ("602 Form") complaining of excessive delay in medical treatment and seeking a reason for the

delay in providing him an MRI. (Doc. No. 1 at 27-30). In the second level appeal, Salinas stated that Dr. Wang lied in his first level response when he stated that he interviewed Salinas regarding his 602 appeal. (*Id*.). Salinas alleges that surgery would not have been necessary if the MRI results has been received in a timely manner. (*Id*). Salinas' appeal was denied at the third level of review stating that Salinas received adequate medical care, including being enrolled in the chronic care program, being placed on medication and physical therapy, and undergoing an MRI and surgery. (*Id*. at 31-32).

Post-surgery, Salinas states that he now suffers from numbness in his left shoulder, arm, and hand and the feeling of needles in his arm and hand. (Doc. No. 1 at 9). On March 23, 2018, Salinas submitted a health care services request form claiming his arm was going numb and his hand was uncontrollably shaking. (Doc. No. 1 at 24). On May 20, 2018, Salinas submitted a health care services request form stating he had pain in his left shoulder and numbness in his arm, ticking in his fingers, and a feeling of hot needles in his arm. (Doc. No. 1 at 25). On July 1, 2019, Salinas was examined by Dr. Virdi, who determined that Salinas' pain and numbness was a result of minimal to mild left carpal tunnel syndrome. (Doc. No. 32-2 at 28).

### III. ANALYSIS

Defendants argue that they are entitled to summary judgment because Defendants exercised medical judgment in determining Salinas' treatment, including the timing of the treatments. (*See generally* Doc. No. 32). Defendants submit that they used their professional medical judgment when they provided Salinas with a conservative course of treatment for his shoulder before resorting to a surgical intervention. (*Id*. at 12-14). Defendants further attest that an MRI was not medically indicated until Salinas finished his course of physical therapy. (*Id*. at 13). Defendants admit that although Salinas' receipt of the MRI results was delayed, this delay did not affect Salinas' treatment or condition. (*Id*.). Further, the reasons for the MRI delay was not Defendants. (*Id.*). Defendants also contend that Salinas' continued pain and numbness is due to carpal tunnel syndrome and are not symptoms related to his left shoulder injury. (*Id*.).

Consequently, Defendants argue that there is no evidence to support Salinas' claim that they acted with deliberate indifference towards Salinas. (*Id*. at 14). Defendants assert that they

provided Salinas with appropriate medical care in the form of "medical evaluations, pain medication, education, X-rays, a MRI, physical therapy, steroid injections, and a surgery with follow-up care." (*Id.*).

The Court first must consider whether Defendants, the moving party, have met their initial burden of "proving the absence of a genuine issue of material fact" and showing *prima facie* entitlement to summary judgment on the issue of Salinas' medical deliberate indifference claim. *Celotex Corp.*, 477 U.S at 323. The *prima facie elements* of medical deliberate indifference are: a "serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain" and that the defendants' "response to the need was deliberately indifferent." *Wilhelm*, 680 F.3d at 1122 (internal quotation marks and citation omitted). The second prong is satisfied by showing "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096 (internal citations omitted).

Defendants do not appear to dispute, and the undisputed facts when viewed in the light most favorable to Salinas' evidence that Salinas had a serious medical need—continued pain in his left shoulder which affected his daily activities and subsequent numbness and pain in his shoulder, arm, and hand. *See McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir.1992) ("The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment."), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir.1997) (en banc). Therefore, Salinas makes an adequate showing from which a reasonable jury could find a serious medical need. The Court now considers the undisputed facts in analyzing the second prong of the deliberate indifference standard as to each Defendant.

**A. Defendant Wang**

The Court finds Defendant Dr. Wang has negated an essential element of Salinas' claim. The undisputed facts show that Dr. Wang provided Salinas with reasonably adequate medical

care for his shoulder pain. Thus, Salinas cannot establish "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096.

Dr. Wang had three encounters with Salinas. On July 28, 2016, Dr. Wang examined Salinas and submitted a request for an MRI. (Doc. No. 32-3 at 2, 64). Salinas underwent an MRI about a month later, on August 30, 2016. (*Id*. at 2, 71, 74). Accordingly, Dr. Wang recognized Salinas' serious medical need and promptly ordered treatment. The normal procedure at the prison is for the radiology department to provide inmates with their MRI results directly. (*Id*. at 3). Dr. Wang's second encounter with Salinas concerned unrelated knee pain and is therefore not relevant to the case. Dr. Wang next encountered Salinas for a follow-up appointment on December 23, 2016, where Salinas notified Dr. Wang that he had not received the results of his MRI. (*Id*. at 2-3, 56, 61-62,). Prior to this time, Dr. Wang had no knowledge that the MRI results were delayed. (*Id*. at 76). That same day, on December 23, 2016, Dr. Wang directed the radiology department to provide Salinas with his MRI results. (*Id*. at 2). Salinas received the MRI results about a month later, on January 30, 2017. (*Id*. at 3, 54). Thus, Defendant Wang has met his initial burden on summary judgment by showing the absence of a genuine issue of material fact as to Salinas' deliberate indifference claim. *See Celotex Corp.*, 477 U.S. at 325.

The burden now shifts to Salinas to present specific facts that show a genuine issue of a material fact. *See* Fed R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586. As an initial matter, Salinas has not identified any medical records which support his claim and has not provided any opinion from a medical expert or any admissible testimony from a medical provider. Salinas provides his own conjecture that the delay in receipt of the MRI and accompanying delay in surgery caused him additional pain. *See Anderson*, 477 U.S. at 248 (recognizing that a party may not rest on allegations in the complaint when evidence shows no genuine issue in dispute). Salinas is not a medical professional. Therefore, Salinas' allegations as to the cause of his pain are outside of his personal knowledge and require medical expertise. Thus, these allegations would not be admissible at trial and a reasonable trier of fact would have no evidence upon which to find those alleged facts. *See id*. at 252; Fed. R. Civ. P. 56(c)(4).

Salinas' allegations that Dr. Wang was deliberately indifferent to his serious medical need is unpersuasive and, indeed, is refuted by the evidence in the record. As discussed above, "[d]eliberate indifference is a high legal standard." *Toguchi*, 391 F.3d at 1060. "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837) ("If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.").

Salinas presents no evidence that Dr. Wang's choice in Salinas' course of treatment was medically unsound. The undisputed facts show that Dr. Wang and other prison medical professionals prescribed pain medication, a steroid injection, physical therapy, an x-ray, an MRI, surgery, and provided Salinas with post-operation follow-up appointments. "A difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." *Colwell v. Bannister*, 763 F.3d 1060, 1068 (9th Cir. 2014) (quoting *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012)). Instead, the plaintiff "'must show that the course of treatment the doctors chose was medically unacceptable under the circumstances' and that the defendants 'chose this course in conscious disregard of an excessive risk to plaintiff's health.'" *Id.* (quoting *Snow*, 681 F.3d at 988); *see Estelle*, 429 U.S. at 107 ("[W]hether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision . . . does not represent cruel and unusual punishment. At most it is medical malpractice."). In this case, Salinas presents no evidence that Dr. Wang deviated from accepted medical judgment in prescribing a conservative course of treatment before proceeding to surgery. Distinguishing a difference of opinion from a choice of medically unacceptable treatment can pose a challenge, but it remains uncontroversial that a medical professional must exercise some degree of professional judgment; a plaintiff can prevail by showing that a medical professional exercised no medical judgment at all. *Colwell*, 763 F.3d. at 1069. Salinas has failed to show that Dr. Wang exercised no medical judgment at all.

Nor does Salinas demonstrate that Dr. Wang was responsible for the delay of the MRI results. Dr. Wang requested an MRI on the same day he first examined Salinas. And immediately after Salinas notified Dr. Wang that he had not received the results of the MRI, Dr. Wang ordered the radiology department to provide Salinas with the MRI results. Salinas has neither presented facts that show that Dr. Wang took a purposeful act or failed to respond to Salinas' shoulder pain, nor presented facts that any further harm resulted from Dr. Wang's actions. Despite the five-month delay in Salinas' receipt of the MRI results, there is no evidence that Dr. Wang was responsible for, much less knew about, this delay. Further, Salinas has not shown how the delay in providing the MRI results further harmed him. To the contrary, Salinas and Dr. Wang both presented evidence that the delay in his receipt of the MRI did not cause an adverse outcome of surgery. (Doc. No. 1 at 21; Doc. No. 32-3 at 76).

Furthermore, Salinas fails to show that Dr. Wang was responsible for any delay in his surgery, which occurred on May 16, 2017, nearly a year-and-a-half after Dr. Wang stopped treating him. Likewise, Salinas fails to show that Dr. Wang was responsible for the treatment of Salinas' numbness in his hand, arm, and shoulder, which developed in 2018, post-surgery. Finally, Salinas vague allegations that Wang "lied when dealing with me and my medical file." (Doc. No. 1 at 3) warrant no further analysis. Salinas provides no information describing what Dr. Wang allegedly lied about or how it is related to his deliberate indifference medical claim. Instead, it appears that Salinas faults Dr. Wang for his response during the grievance process. Due to the lack of explanation and supporting evidence, the Court declines to consider or analyze Salinas' vague and unsubstantiated claim. Based upon a review of the record and finding no genuine dispute as to any materials fact, the Court finds Defendant Wang is entitled to summary judgment in this matter.

**B. Defendant Johnson**

The Court similarly finds Defendant Johnson, N.P., has negated an essential element of Salinas' claim. The undisputed facts show that Johnson provided reasonably adequate medical care for Salinas shoulder pain. Thus, Salinas cannot establish "(a) a purposeful act or failure to

respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096.

Johnson treated Salinas from approximately August 6, 2015 to July 12, 2016. (Doc. No. 32-5 at 2). During this period, Johnson encountered Salinas on five separate occasions. On December 1, 2015, Johnson ordered an x-ray. On December 9, 2015, Johnson ordered a steroid injection. On December 22, 2015, Johnson ordered pain medication. And on both January 26, 2016 and February 16, 2016, Johnson ordered physical therapy. There appears some dispute as to when Salinas started physical therapy. Salinas alleges Johnson ordered physical therapy on December 22, 2015 and January 26, 2016 but physical therapy did not commence until March 22, 2016. (Doc. No. 1 at 8; Doc. No. 32-3 at 49, 58). Defendants submit records which show that Johnson ordered physical therapy on January 26, 2016 and February 16, 2016. (Doc. No. 32-3 at 57). In any event, these records show that Johnson referred Salinas to physical therapy at least twice and possibly three times during the relevant time. There is no evidence, or even allegation, that Johnson caused any delay in Salinas physical therapy. Thus, Johnson has met her initial burden on summary judgment by showing the absence of a genuine issue of material fact that she was not deliberately indifferent to Salinas serious medical condition. *See Celotex Corp.*, 477 U.S. at 325.

Because Johnson has satisfied her initial burden, the burden now shifts to Salinas to present specific facts that show a genuine issue of a material fact. *See* Fed R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586. Here, as with Dr. Wang, Salinas fails to submit any medical evidence that Johnson was deliberately indifferent or that her course of treatment was medically unacceptable. Rather, the evidence shows that Johnson used her medical judgment when she treated Salinas with conservative treatment, including pain medication, an x-ray, a steroid injection, and referrals to physical therapy. After his physical therapy session on March 22, 2016, Salinas complained of pain and stated that he was frustrated with physical therapy because he was shackled and unable to do the physical therapy properly. (Doc. No. 32-3 at 49). However, there is no evidence in the record to show that Johnson knew of Salinas' difficulty during physical

15

therapy on March 22, 2016 or beyond, nor that Johnson was responsible for ensuring that Johnson's physical therapy was completed.

To the extent that Salinas contends that Johnson was responsible for the delayed results of the MRI, his argument is unavailing. The undisputed facts show that Johnson did not treat Salinas after July 12, 2016. Indeed, Salinas' MRI was ordered on July 28, 2016, after he was transferred to Kern Valley State Prison. There is no evidence in the record to suggest, let alone show, that Johnson knew about any delay in the MRI results, nor that Johnson had any responsibility or control over the delivery of the MRI results at a different correctional institution. For the same reason there is no evidence to show that Johnson had any involvement in scheduling Salinas' surgery or was responsible for his post-surgery care. And the uncontroverted evidence reveals that any post-surgery numbness in Salinas' hand, arm, and shoulder which developed in 2018, is unrelated to his shoulder pain and shoulder surgery and instead is attributable to carpal tunnel syndrome. Accordingly, the Court will grant summary judgment on Salinas' claim against Johnson.

Construing the evidence in the light most favorable to Salinas, the Court finds no evidence to raise a triable issue as to whether Defendant Johnson N.P. or Defendant Dr. Wang were deliberately indifferent to Salinas' shoulder pain or otherwise were responsible for any delay in providing Salinas with his MRI results or shoulder surgery. The Court therefore concludes that Defendants are entitled to summary judgment as a matter of law.

Accordingly, it is **ORDERED**:

1. The Clerk of Court is directed to correct the spelling of Defendant Johnson's name on the docket.
2. Defendants' Motion for Summary Judgment (Doc. No. 32) is GRANTED.
3. Judgment be entered in favor of the Defendants; all deadlines be terminated; and, the case be closed.
4. Plaintiff's construed motion for default contained in his Complaint (Doc. No. 1 at 12) is DENIED.

DONE AND ORDERED

Dated: July 7, 2021

*signature*
HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE